## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALPHONSE PORTER**                    **CIVIL ACTION**

**VERSUS**                             **NO. 07-2224**

**BURL CAIN, WARDEN**                  **SECTION "R"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations pursuant to 28 U.S.C. §636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. §2254(e)(2).[1] For the following reasons, it is recommended that the instant

---

[1] Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. §2254(e)(2)(B).

petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

## I. STATE COURT PROCEDURAL BACKGROUND

The petitioner, Alphonse C. Porter, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On July 27, 1995, Porter, along with co-defendant Kendall Young, was indicted by a grand jury in Orleans Parish for the first degree murder of Troy Mouton.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> On March 26, 1995, Troy Mouton, Penny Schexnayder, Bryson Corso, Amy Fontenot, Jonathan Pellegrin, and Zane Garnette drove to New Orleans for Penny's birthday. Corso testified that he drove the group in the car he and Amy Fontenot owned from the Houma-Thibodeaux area and that they arrived in New Orleans at around noon.  He testified that they went to the lakefront and went out on a friend's boat.  He also stated that they went to a charitable function and admitted having four or five drinks.  Corso testified that they started to drive home at around 9:30 p.m.; but, when he could not find the interstate, they decided to stop at Wendy's to get something to eat.  He said that because Troy and Penny started arguing, he pulled over to a bar called the Spider's Web so that Amy Fontenot could drive.  After they stopped, Penny got out of the car and sat on the sidewalk; and, Troy went over to her to get her back in the car.  Corso testified that he and Amy switched places in the car, and that Jonathan stayed in the back seat.
> Corso stated that at this point, two men came out of the bushes and went on either side of the car.  He said that the one who came to his side of the car was armed with an Uzi-type weapon and ordered him out of the car. As Corso got out of the car, the man went through his pockets and then reached inside the car, taking some

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Indictment, 7/27/95.

change that was on the center console.  Corso testified
that the man saw Troy and Penny and walked towards them;
but, he further stated that he then looked over toward
Amy because she was refusing to give the car keys to the
other man.  After he told Amy to give the man the car
keys, he heard a gunshot.  He turned and saw the first
gunman run away, then turn and shoot Troy in the chest.
Corso saw the gunman jump into a car that had just pulled
up to the curb.  He saw the other robber also jump into
that car.  Corso later identified the shooter as the
defendant at a photographic lineup.

Dr. Susan Garcia performed the autopsy on Troy
Mouton and testified that he was declared dead at 1:55
a.m. on March 27, 1995.  She stated that he died of a
gunshot wound to the chest which caused injuries to his
liver, pancreas, and the artery leading to his left
kidney.  She also stated that his blood alcohol level was
.04 percent.

Detective Archie Kaufman testified that he was the
lead homicide investigator and learned that several items
had been taken, including Penny Schexnayder's ATM card.
He contacted the bank, and Rokeya Knight testified that
she retrieved pictures from the video camera at the
Premier Bank branch on Read Boulevard showing that
someone attempted to use the ATM card between 11:06 and
11:10 on the night of March 26.  Kaufman testified that
he showed the pictures from the ATM to Detective Herman
Cade who identified the person in the picture as
defendant.  He then put together a photographic lineup
that he showed to Corso, Schexnayder, and Pellegrin, all
of whom selected defendant's photograph.  Kaufman
testified that after defendant was arrested, he showed
him the picture from the ATM machine.  He said that
defendant admitted that was him in the picture, but he
stated he would not tell where he got the ATM card.

Officer Robert Kelly testified that he was on his
way to work when he drove past a bar at Elysian Fields
and Filmore and saw a woman chasing a car that sped away.
He got behind the vehicle the woman had chased and wrote
down the license plate number just in case it was some
sort of an incident.  He stated that he saw three black
males in the car.  He described the car as a white
four-door with either a dark blue or black vinyl roof.
When he arrived at the station for work, the report of
the shooting came in; and, he returned to the scene.
Detective Kaufman testified that a check of the license
plate number indicated that the car had been stolen.  He
said that the car was later recovered on April 3; but,

that it had a temporary license plate and two doors, not four. He also stated that he spoke with two of the people found in the car, Freddie Pollard and Carlson Young, and concluded that they were not involved in the homicide.

Officer Glen Burmaster performed an examination of fingerprints lifted from various items of evidence; and, he did not find defendant's fingerprints on any of them. He compared the fingerprints on a business card and an insurance renewal notice to those of defendant, Kendall Young, Freddie Pollard, Carlson Young, Troy Mouton, and Penny Schexnayder and found no match. He also stated a palm print taken from the exterior driver's side of Fontenot's and Corso's car was not suitable for matching. He also did not find defendant's prints in the stolen car.

Jonathan Pellegrin testified about the trip to New Orleans with his friends and said that they stopped at the Spider's Web because a friend of his worked there. When they stopped, he said that Troy and Penny got out of the car and that Zane followed them to make sure that they would not get into a major fight. Jonathan stayed where he had been, which was seated behind the driver; and, he looked up when he heard someone demanding money. He saw a man with a gun next to Bryson, who had switched places with Amy; and, he testified that he looked right at the man with the gun for a few seconds and was then hit in the side of the face by a second person. This person demanded money, and Jonathan stated that he could not find his wallet in his pockets. He said that the man then punched him in the chest and yanked off the gold chain he wore around his neck. Jonathan testified that the man pulled him out of the car and that he saw the man and Amy fighting over the car keys. He stated that the man called over to the man with the gun and said, "Trey, give me the Mac." He then heard a shot and dove into the car. He looked out of the car and saw the man with the gun struggling with Penny. Jonathan stated that Troy broke the man's grip and that as the man went toward the street, he turned around and shot Troy. He saw the man jump into a car that Penny pursued and grabbed, but he said that the car shook, causing Penny to fall.

Penny Schexnayder testified that after going to the lakefront for a leukemia charity function and out on a friend's boat, she, Troy, who was her fiancé, and their friends decided to return home. She admitted drinking some beer and four or five Crown Royal and water cocktails. She stated that she and Troy began to have an

argument because she did not want to go home. Penny
stated that because she and Troy were arguing, the car
stopped and she got out. She stated that Troy also got
out to ask her to get back in and that after they talked,
the argument ended. She further stated that Zane came to
see if they were okay and then after he walked away, she
heard a gunshot. She testified that when she turned, the
shooter grabbed her by the arm and took her purse. She
said that Troy grabbed her to pull her away from the
shooter, whom she later identified as defendant, and
separated them and that defendant then ran away. Penny
further stated that Troy chased after him, and she chased
after Troy, who jumped to grab defendant. She said that
defendant then shot Troy and laughed. She chased him and
jumped onto the back of the car he just entered. She
said that she then either fell off or was thrown off of
the car.

    Mardell Condoll testified that defendant is her
brother and that she and defendant were at a wedding
rehearsal on the West Bank on the night of March 26 and
that they left at 10:00 p.m. She said that they returned
to their grandfather's house, where they lived, at 10:30
p.m. She further testified that after they got home,
defendant sat out on the porch and that she heard a man
walk up and talk to defendant. She saw that the man,
whose name was Jessie, had a bank card in his hand and
that he and defendant left. She was shown Defense
Exhibit 6, which was a composite of the ATM photograph,
and identified the man in the picture as Jessie.

State v. Porter, 756 So.2d 1156, 1157-59 (La. App. 4th Cir. 2000);

State Record Volume 3 of 7, Louisiana Fourth Circuit Opinion, 98-

KA-0279, pages 1-5, March 15, 2000.

    On August 14, 1996, the state trial court granted the State's

motion to sever and proceeded with Young's trial before a jury.[4]

---

[4]St. Rec. Vol. 3 of 7, Trial Minutes (Young), 8/14/96.

On August 17, 1996, the state trial court declared a mistrial because the jury could not reach a verdict.[5]

Porter was tried before a jury on October 16 through October 20, 1996, after which the state trial court declared a mistrial because the jury could not reach a verdict.[6]  After a second trial, held April 2 through 5, 1997, the jury found Porter guilty of second degree murder.[7]

At a hearing held on April 14, 1997, the state trial court denied Porter's motion for post verdict judgment of acquittal or for new trial.[8]  The court also sentenced Porter to life imprisonment without benefit of parole, probation or suspension of sentence.[9]  Thereafter, on June 12, 1997, the State entered a nolle prosequi as to Young.[10]

---

[5]St. Rec. Vol. 3 of 7, Trial Minutes (Young), 8/17/96; see also, Trial Minutes (Young), 8/15/96; Trial Minutes (Young), 8/16/96.

[6]St. Rec. Vol. 3 of 7, Trial Minutes, 10/20/96; see also, Trial Minutes, 10/16/96; Trial Minutes, 10/17/96; Trial Minutes, 10/18/96; Trial Minutes, 10/19/96.

[7]St. Rec. Vol. 3 of 7, Trial Minutes, 4/2/97; Trial Minutes, 4/3/97; Trial Minutes, 4/4/97; Trial Minutes, 4/5/97; St. Rec. Vol. 5 of 7, Trial Transcript, 4/3-5/97; Transcript of Jury Instructions, 4/5/97.

[8]St. Rec. Vol. 3 of 7, Hearing Minutes, 4/14/97; see also, Minute Entry, 4/9/97; Minute Entry, 4/15/97.

[9]Id.

[10]St. Rec. Vol. 3 of 7, Minute Entry, 6/12/97; see also, St. Rec. Vol. 1 of 7, Indictment, handwritten notation, 7/27/95.

On appeal, Porter raised four grounds for relief:[11] (1) undisclosed statements of Freddie Pollard and Carlson Young contained exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963); and (2) he was entitled to an evidentiary hearing to determine whether there was prosecutorial misconduct in that the prosecution instructed Penny Schexnayder what to say in her testimony. The Louisiana Fourth Circuit affirmed the conviction and sentence on March 15, 2000, finding no merit to Porter's claims.[12]

The Louisiana Supreme Court denied Porter's subsequent writ application without reasons on April 12, 2001.[13] His conviction became final 90 days later, on July 11, 2001, when he did not file a petition for writ of certiorari in the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C.

---

[11]St. Rec. Vol. 5 of 7, Appeal Brief, 98-K-0279, 9/2/98; State v. Porter, 756 So.2d at 1159-60; St. Rec. Vol. 3 of 7, 4th Cir. Opinion, 98-KA-0279, pp. 6, 8, 3/15/00.

[12]State v. Porter, 756 So.2d at 1160; St. Rec. Vol. 3 of 7, 4th Cir. Opinion, 98-KA-0279, p.9, 3/15/00.

[13]State v. Porter, 790 So.2d 3 (La. 2001); St. Rec. Vol. 3 of 7, La. S. Ct. Order, 2000-KO-1135, 4/12/01; see also, St. Rec. Vol. 5 of 7, La. S. Ct. Letter, 2000-KO-1135, 4/24/01. Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a writ application in the Louisiana Supreme Court. Although the writ apparently was not file-stamped within the thirty day period, the record does not contain a copy of the writ application or its mailing date. Furthermore, the State does not contend that this writ was untimely.

§2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On March 25, 2002, Porter signed the affidavit attached to an application for post-conviction relief and submitted the application to the state trial court.[14] In that application, Porter raised four claims: (1) the trial court lacked jurisdiction because of the indictment was tainted by the discriminatory grand jury selection process and counsel was ineffective for failing to object to the indictment before trial; (2) the trial court failed to specifically rule on his competence after appointment of the sanity commission and counsel was ineffective for failing to object to the commencement of trial; (3) the trial court erred in denying the defense's <u>Batson</u> challenges and counsel was ineffective for failing to raise this claim on appeal; and (4) the trial court used the wrong standard in determining his competence.

---

[14]The Court located a copy of the Uniform Application for Post-Conviction Relief as an attachment to Porter's writ application No. 2003-K-0885, filed with the Louisiana Fourth Circuit on June 6, 2003. The writ application, No. 2003-K-0885, and its attachments, including the Uniform Application for Post-Conviction Relief, have been filed into the Court's record. Rec. Doc. No. 17. The copy of the application for post-conviction relief does not have a file stamp or file date from the trial court. However, the notarized affidavit on page seven of the copy bears the date March 25, 2002, which is the earliest date on which Porter could have given it to prison officials for mailing to the state trial court. <u>See also</u>, St. Rec. Vol. 7 of 7, Mail Receipt, 4/2/02 delivery date; St. Rec. Vol. 2 of 7, Letter from Porter, 12/2/02. The Court, therefore, will deem the application to have been filed in the state trial court on March 25, 2002.

On March 20, 2003, the state trial court denied the original post-conviction application.[15] The Court denied relief on the first claim because the defense did not file a pretrial motion to quash as required by Louisiana law. The Court also found that the second claim was without merit because competency was established on October 15, 2006. The Court denied relief on the third and fourth claims for lack of foundation in the record.

On May 27, 2003, Porter submitted a writ application to the Louisiana Fourth Circuit which was filed in that Court on June 6, 2003.[16] Porter raised the same four claims appearing in his trial court application and he attached a motion to quash the indictment. On June 11, 2003, the court denied relief finding no error in the trial court's ruling and finding that the trial court's record did not contain a copy of a supplemental application for post-conviction relief, which was referenced in the writ application.[17] The court also advised Porter that it did not have jurisdiction to order the prison officials to locate his lost legal materials.

Thereafter, on June 26, 2003, Porter wrote a letter to the state trial court inquiring about the supplemental application for post-conviction relief he claimed to have submitted to the court in

---

[15]St. Rec. Vol. 7 of 7, Trial Court Judgment, 3/20/03.

[16]The Court obtained a copy of the writ application, No. 2003-K-0885, and its attachments, from the Clerk of the Louisiana Fourth Circuit. The documents have been filed into the Court's record. Rec. Doc. No. 17.

[17]St. Rec. Vol. 7 of 7, 4th Cir. Order, 2003-K-0885, 6/11/03.

September of 2002.[18]   He therewith resubmitted his supplemental
claims and attached a copy of the mail receipt dated September 20,
2002, and a copy of the supplemental brief signed by him on
September 18, 2002.[19]   These supplemental briefs urged ineffective
assistance of counsel for failure to properly investigate, to
cross-examine witnesses, or to object to improper jury charges.   On
October 13, 2003, Porter wrote another letter to the state trial
court inquiring about his supplemental application for post-
conviction relief submitted in September of 2002.[20]   On November 13,
2003, the state trial court denied the ineffective assistance of
counsel claims presented in the supplemental application.[21]

        In the meantime, several months earlier on July 15, 2003,
Porter submitted a writ application to the Louisiana Supreme Court,
which was filed on July 29, 2003, seeking review of the Louisiana
Fourth Circuit's June 11, 2003, ruling.[22]   Porter submitted a
supplemental brief to the Louisiana Supreme Court which was filed

---

[18]St. Rec. Vol. 2 of 7, Letter from Porter, 6/26/03; Supplemental Brief,
dated 6/26/03; Mail Receipt, 9/20/02; Supplemental Brief (dated 9/18/02).

[19]Id.

[20]St. Rec. Vol. 2 of 7, Letter from Porter, 10/13/03.

[21]St. Rec. Vol. 2 of 7, Trial Court Judgment, 11/13/03.

[22]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 03-KH-2139,
7/29/03.  The Court will presume this writ to have been timely, because in
the cover letter attached to a later-filed supplemental brief, Porter
indicated that, on June 16, 2003, he asked for and received a 60 day
extension of time to file the original writ application sent to the court on
July 15, 2003.  St. Rec. Vol. 7 of 7, Supplemental Brief, 03-KH-2139,
8/13/03. This would at the least afford Porter some tolling benefits with
respect to the AEDPA filing period discussed later in this report.

on December 18, 2003, along with a copy of the trial court's November 13, 2003 ruling, raising the ineffective assistance of counsel claims submitted to the trial court in the illusive supplemental application for post-conviction relief.[23]    The Louisiana Supreme Court eventually denied without reasons Porter's writ application on July 2, 2004.[24]

Nineteen months later, on February 7, 2006, Porter signed a writ application to the Louisiana Fourth Circuit, which was untimely[25] filed on March 3, 2006.[26]    In that application, Porter claimed that the prison officials located his missing legal materials and he sought further review of his ineffective assistance of counsel claims, which were raised in his 2002 supplemental brief to the state trial court and which were denied by the trial court on November 13, 2003.    The Louisiana Fourth Circuit denied the writ application on March 20, 2006, finding no error in the trial court's ruling.[27]

---

[23]St. Rec. Vol. 7 of 7, Supplemental Brief, 03-KH-2139, 12/18/03. Porter submitted other supplemental briefs to the Louisiana Supreme Court.

[24]State ex rel. Porter v. State, 877 So.2d 137 (La. 2004); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2003-KH-2139, 7/2/04.

[25]Petitioner had 30 days from issuance of the trial court's order to file for review in the Louisiana Fourth Circuit. La. App. Rule 4-3; La. Code Crim. P. art. 922.  The related trial court ruling was issued on November 13, 2003.

[26]A member of the Court's staff obtained a copy of the writ application, No. 2006-K-0221, from the clerk of the Louisiana Fourth Circuit.  It has been separately filed into this Court's record. Rec. Doc. No. 15.

[27]St. Rec. Vol. 7 of 7, 4th Cir. Order, 2006-K-0221, 3/20/06.

On January 12, 2007, the Louisiana Supreme Court denied Porter's subsequent writ application, raising the ineffective assistance of counsel claims, pursuant to La. Code Crim. P. art. 930.8 and State ex rel. Glover v. State,[28] 660 So.2d 1189 (La. 1995).[29] The court also denied Porter's application for rehearing.[30]

II. FEDERAL HABEAS PETITION

On May 1, 2007, the pauper order authorizing the filing of Porter's petition for federal habeas corpus relief in this court was signed. The petition raised four grounds for relief:[31] (1) ineffective assistance of counsel because (a) counsel allowed the prosecutor to use false, coerced and perjured testimony, and (b) counsel failed to challenge the trial court's erroneous jury charge; (2) prosecutorial misconduct; (3) erroneous jury instruction; and (4) the Louisiana Supreme Court erred in imposing La. Code Crim. P. art. 930.8.

_____

[28]In Glover, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under Article 930.8, even if the lower court addressed the merits or did not consider timeliness.

[29]State ex rel. Porter v. State, 948 So.2d 146 (La. 2007); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2006-KH-1367, 1/12/07; La. S. Ct. Writ Application, 06-KH-1367, 6/6/07 (metered 4/11/06). A member of the Court's staff obtained an additional copy of the writ application from the clerk of the Louisiana Supreme Court. It has been separately filed into this Court's record. Rec. Doc. No. 17.

[30]State ex rel. Porter v. State, 949 So.2d 431 (La. 2007); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2006-KH-1367, 3/9/07; Application for Rehearing, 06-KH-1367, 2/7/07 (metered 1/23/07). A member of the Court's staff obtained an additional copy of the Application for Rehearing from the clerk of the Louisiana Supreme Court. It has been separately filed into this Court's record. Rec. Doc. No. 17.

[31]Rec. Doc. No. 1.

The State filed a response in opposition to Porter's petition, arguing that the petition should be dismissed as untimely filed under federal law.[32] Porter filed a reply to the State's opposition arguing that his untimely filing should be excused because his September 20, 2002, supplemental application for post-conviction was misplaced by the trial court and prison officials misplaced his paper work.

III. <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254. The AEDPA went into effect on April 24, 1996[33] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Porter's petition, which, for reasons discussed below, is deemed filed in this federal court on April 17, 2007.[34]

_____

[32]Rec. Doc. No. 12.

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert.</u> <u>denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. §2254(b), (c)). In this case, the State asserts the defense that the petition is not timely filed.

IV. STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[35]

_____

Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Porter's petition was filed by the clerk of court on May 1, 2007. Porter chose not to date his application or the attached memorandum in support. The envelope in which his petition was received was metered on April 17, 2007. Affording Porter every benefit, this date is presumed to be the date of filing. The Court is aware that the pauper application attached to the petition is dated January 12, 2007 and certified January 19, 2007. However, Porter also attached as an exhibit the Louisiana Supreme Court's opinion issued March 9, 2007. The petition must have been submitted to prison officials for mailing after that date.

[35]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
> C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> D.   the date on which the factual predicate of the claim or

14

Duncan v. Walker, 533 U.S. 167, 179-80 (2001).  Porter's conviction was final on July 11, 2001.

Therefore, under a literal application of the statute, Porter had until July 11, 2002, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his

_____

claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. §2244(d).

rights.  Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Under a broad reading, Porter alleges that his delay should be excused because of the confusion over the filing of his supplemental application for post-conviction relief on September 20, 2002.  He also suggests that between 2003 and 2006, he had difficulty locating his paperwork at the prison which prohibited him from seeking proper review of the supplemental ineffective assistance of counsel claims.

The record, however, reflects that, in 2003, Porter sent copies of his supplemental application to the state trial court with his June 26, 2003, letter and referenced it again in his October 13, 2003 missive.  He also received a ruling on the supplemental application from the trial court on November 13, 2003.  In spite of his suggestion otherwise, Porter also presented the trial court's ruling and his supplemental claims to the Louisiana Supreme Court for its review via that Court's December 18, 2003 filing.  The record, therefore, does not support his suggestion that he was stifled by the prison or the state courts in his ability to present his ineffective assistance of counsel claims in a more timely manner.

Porter has not asserted any other reason, and the court can find none, that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and

a review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions.[36]  See <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to

_____

[36]The court also notes that, as will be shown later in this report, Porter's AEDPA filing period expired on October 19, 2004.  This was over 10 months prior to Hurricane Katrina striking this area in August of 2005.  Thus, the record does not demonstrate that the temporary disruptions caused by the hurricane in late 2005 and early 2006 are relevant to the AEDPA timeliness calculation in this case.

the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing

18

requirements,'" such as timeliness and location of filing.  <u>Pace</u>, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)");  <u>Williams v. Cain</u>, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 469 (5th Cir. 1999)); <u>Smith v. Ward</u>, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  <u>Causey v. Cain</u>, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002); <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment

or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period began to run in Porter's case on July 12, 2001, the day after his conviction became final. The limitations period ran uninterrupted for 256 days, until March 25, 2002, when Porter signed and submitted his original application for post-conviction relief to the state trial court.[37] Affording Porter every benefit, the application, as supplemented, is considered to have remained pending until July 2, 2004, when the Louisiana Supreme Court denied relief on the related writ application.[38]

The AEDPA statute of limitations ran for an additional 109 days, beginning July 3, 2004, to October 19, 2004, when it expired. Porter had no properly filed state post-conviction or other collateral review proceedings pending during that period. Porter had no other filings in the state courts until his untimely submission to the Louisiana Fourth Circuit on February 7, 2006,

---

[37]<u>See</u>, Rec. Doc. No. 17, Uniform Application for Post-Conviction Relief attached to Louisiana Fourth Circuit writ application No. 2003-K-0885., Rec. Doc. No. 17; <u>see also</u>, St. Rec. Vol. 7 of 7, Mail Receipt, 4/2/02 delivery date; St. Rec. Vol. 2 of 7, Letter from Porter, 12/2/02.

[38]<u>State ex rel. Porter v. State</u>, 877 So.2d 137 (La. 2004); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2003-KH-2139, 7/2/04.

almost 16 months later.  Nevertheless, Porter's later state filings are not relevant to the timeliness calculation.  <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000).

Thus, the record establishes that, after his conviction became final, Porter allowed well over one year to lapse without any properly filed state court proceedings and without having filed a timely federal petition for habeas corpus relief.  Thus, his petition, deemed filed on April 17, 2007, must be dismissed as time-barred.

<u>**RECOMMENDATION**</u>

It is therefore **RECOMMENDED** that the petition of Alphonse C. Porter for issuance of a writ of habeas corpus under 28 U.S.C. §2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __12th__ day of __February__, 2009.

_Alma L. Chasez_
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE